CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

MAY 0 8 2009

JOHN F CORCORAN, CLERK
BY: /s/ _____
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| RITA SHORES o/b/o J.W.M., | Case No. 5:08cv00043 |
| *Plaintiff* | REPORT AND |
| v. | RECOMMENDATION |
| MICHAEL J. ASTRUE, | By: Hon. James G. Welsh |
| Commissioner of Social Security, | U. S. Magistrate Judge |
| *Defendant* | |

On behalf of J.W.M., a minor child, Rita Shores brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ("the agency") denying the claim of J.W.M. for child's Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 1381 *et seq*. Jurisdiction of the court is pursuant to 42 U.S.C. § 1383(c)(3), incorporating 42 U.S.C. § 405(g).

The Commissioner's Answer was filed on October 17, 2008 along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered on October 1, 2008, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Seeking reversal of the adverse agency decision, Ms. Shores argues on appeal that substantial evidence does not support the finding of the administrative law judge ("ALJ") that J.W.M.'s mental health disorders neither met nor functionally equaled the applicable limitations of an impairment listed in appendix 1 of subpart P of part 404 of title 20 of the Code of Federal Regulations ("Listings"). Each party has moved for summary judgment; no written request was made for oral argument,[1] and the case is now before the undersigned for a report and recommended disposition.

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and an appropriate final judgment be entered affirming the Commissioner's decision denying the application for children's SSI filed on behalf of J.W.M..

I. **Standard of Review**

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to SSI. "Under the ... Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)

---

[1] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

2

(quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3$^d$ at 589). Nevertheless, the court "must not abdicate [ its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2$^d$ 396, 397 (4th Cir. 1974). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## II.     Administrative History

The record shows that Rita Shores, on behalf of J.W.M., protectively filed an SSI application on July 14, 2003, alleging the child's disability beginning December 1, 2000 due to learning difficulties, speech delays, anxiety and an attention deficit/hyperactivity disorder. (R.67,70,117,123, 134,140,145-150,154-161,168-169, 379-380,403-407.) The claim was denied both initially and on reconsideration, and two administrative hearings before an ALJ were held. (R.77-88, 92-93,96-105,107-113,367-387,388-416.) At the September 21, 2005 hearing, the plaintiff and the child were present and testified. (R.367-387.) After the plaintiff retained counsel, a second hearing was held on January 18, 2006, at which time the plaintiff and the child again testified. (R.105-106, 388-416.)

3

Utilizing the agency's established evaluation process to determine whether an individual under the age of eighteen is disabled, the plaintiff's claim was denied by written administrative decision dated May 15, 2006. (R.67-76.) *See* 20 C.F.R. § 416.924. *Inter alia*, the ALJ determined that J.W.M. had an adjustment disorder, an attention deficit/hyperactivity disorder, speech delays, and an anxiety disorder which were "severe" within the meaning of the Act.[2] (R.70.) After next considering each of the six functional "domains" outlined in 20 C.F.R. § 416.926a(b)(1), ALJ concluded that these conditions, either individually or in combination, were not functionally equivalent to a listed condition. (R.70-76.)

After the ALJ's issuance of his adverse decision, the plaintiff made a timely request for Appeals Council review and submitted additional medical evidence.[3] (R.10-60,63-64,361-366.) Her request was denied (R.5-9), and the decision of the ALJ now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

## II. Facts and Analysis

### A. School Records

---

[2] Quoting *Brady v. Heckler*, 724 F.2$^d$ 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2$^d$ 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. § 404.1520(c)

[3] The records (R.10-60) submitted to the Appeals Council consist of initial evaluation notes dated 06/26/06 and subsequent treatment notes variously dated between 07/22/06 and 12/14/06 from Comprehensive Health System, LLC. Since they do not relate to the child's condition on or before the date of the ALJ's decision (05/15/06), they do not qualify as new and material evidence requiring Appeals Council consideration. *E.g., Wilkins v. Secretary, HHS*, 953 F.2$^d$ 93, 95 (4th Cir, 1991.)

4

The record in this case shows that the J.W.M. was born in 1994 and was nine years of age at the time the SSI application was filed. (R.67,70,117,120.) His school records the 2002-2003 school year, show that his grades were all average or above average, and he was regularly promoted to the fourth grade. (R.214,217.) Consistent with this regular academic progress, his third grade teacher assessed J.W.M.'s math, reading and writing skills to be "average:" (R.173.) Although he was noted to have difficulty staying focused, his teacher deemed him to have no serious deficits in any of the functional domains, including the areas of acquiring and using information, interacting appropriately with others, and caring for himself. (R.174-180.)

During the following school year, J.W.M.'s fourth grade teacher deemed J.W.M's math skills to be at grade level and his reading and writing skills to be "below average." (R.189.) Although she noted his ongoing difficulty staying on task, she reported that he had no serious problem either acquiring and using information, interacting appropriately with others, or caring for himself. (R.190-196.)

During his sixth grade school year (2005-2006), J.W.M.'s physical education teacher described him as "a very polite and happy youngster" (R.241), and his classroom teacher reported that he had no classroom difficulties either academically or in his interaction with others (R.248-250). Similarly, the child's individualized education plan noted that he was a very verbal student with age appropriate language, voice and fluency skills. (R.258.) For the initial marking periods during his sixth grade school year, J.W.M.'s grades were below average in math, reading and history. (R.251,269.)

5

B.  **Mental Health Information**

As part of a January 2004 psychological assessment, Joseph Cianciolo, Ph.D., found J.W.M. to be alert and fully oriented, to demonstrate logical and coherent thought processes, and to have age-appropriate insight and judgment. (R.282-284.) Based on the results of a Weschler general intelligence test for children, J.W.M. had a verbal I.Q. score of 106, a performance I.Q. score of 110, and a full-scale I.Q. score of 108. (R.293.) Dr. Cianciolo noted that J.W.M. had some difficulty concentrating and required restatement of some test questions; however, Dr. Cianciolo found that J.W.M. learned from his mistakes and responded appropriately to frustration and encouragement. (R.283.) Based on the history provided by Ms. Shores, his clinical assessment and his testing results, Dr. Cianciolo concluded that over the preceding year J.W.M. had demonstrated moderate symptoms of an adjustment disorder with disturbance of conduct. (R.283.)

One month later, following a multi-disciplinary assessment at Shenandoah Valley Child Development Clinic (R.286-300) it was concluded that J.W.M. had a "significant past" that included multiple threats and at least one attempt on his life by a sibling, multiple caregivers, multiple interstate moves, an incarcerated mother, and an unknown father. (R.292.) Despite the obvious negative functional and emotional impact associated with such a significantly dysfunctional family situation, the assessing professionals concluded that J.W.M. was "functioning remarkably well" with few behavioral or emotional problems. (*Id.*) In the team's opinion, J.W.M. demonstrated a number of criteria consistent with an attention deficit/hyperactivity disorder ("AD/HD"); however, they felt that such a diagnosis was at that time premature "due to the significant instability that had been present in [his] life." (*Id.*)

6

On August 11, 2004, Dr. Robert Gunther, prescribed Ritalin for AD/HD (R.347), and it was reported to Ms. Shores that J.W.M. did better in school with this continuing medication regime. (R.345,401.)

Reviews of the administrative record in the case were conducted by state agency psychologists in January, June and August 2004. (R.301-305.) In each instance the reviewer concluded that J.W.M. had an adjustment disorder and a speech delay, that each of these conditions was "severe," and that neither one met nor functionally equaled a listed impairment. (*Id.*) Based on subsequently submitted information, the two later state agency reviewers additionally concluded that J.W.M.'s school records demonstrated a less than marked limitation [4] in the *acquiring and using information* domain, a marked limitation in the *attending and completing tasks* domain, and a less than marked limitation in the *interacting and relating to others* domain. (R.303-305.)

During 2004 Vicki Kave, a social worker,[5] also opined about J.W.M.'s functional problems. In June she reported that the child had difficulty with recent and remote memory and with

---

[4] A *marked* limitation in a domain is defined in 20 C.F.R. § 416.926a(e)(2) to be: an impairment which "interferes seriously with [a person's] ability to independently initiate, sustain, or complete activities. [A person's] day-to-day functioning may be seriously limited when [his or her impairment] limits only one activity or when the interactive and cumulative effects of [the impairments] limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning [the agency] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. The overall assessment of [an individual's] ability to appropriately, effectively, and independently perform activities must be compared to the performance of other children of similar age who do not have impairments.

[5] Social Security Ruling 06-03p provides that the opinions from sources (such as nurse practitioners or licenced clinical social workers) that are not "acceptable medical sources," should be evaluated using the same factors that apply to evaluating opinions from acceptable medical sources. *See* 20 C.F.R. § 404.1527(d) and § 416.927(d).

7

articulation and expressive language; additionally, she reported that he did not participate in school or community activities "due to child care difficulties." (R.308-310.) In her opinion, J.W.M.'s personality and behavior were "positive" and "pleasant." (*Id.*) Seventeen months later in her response to a second questionnaire, Ms. Kave reported that she had not seen J.W.M. since October 2004 and did not feel qualified to opine further concerning his school activities in any of the six domains. (R.317,333-336.) She did, however, describe him as having an adjustment disorder with only mild symptoms. (R.331.)

Approximately one month before the second administrative hearing in January 2006 a second social worker (Victoria Graff) described J.W.M. as "functioning well," to be receiving treatment for no chronic condition, to have only moderate deficiencies of concentration and persistence, and to be no more than mildly limited in any other functional domain. (R.338-343.)

Consistent with this assessment, in her hearing testimony Ms. Shores described J.W.M. as listening "pretty good" (*sic*), playing well with other children, participating in both baseball and horseback riding, and doing well in both activities. (R.407-410.) In her view, however, he was easily distracted, had difficulty keeping on task, and had comprehension problems . (R.403-407.)

J.W.M. also testified at the hearing. (R.390-401.) On careful review, the record demonstrates no articulation, comprehension, or other functional difficulty.

C. **Plaintiff's Functional Equivalence Claim**

8

On appeal, it is argued that the ALJ failed to consider J.W.M.'s documented school-related functional problems. It is the plaintiff's contention that the record demonstrates multiple functional deficits in three domains which are of listing-level severity.

In the context of a child's SSI disability claim, under agency's regulations functional equivalence to a listed impairment is defined as an impairment of listing-level severity, "*i.e.*, it must result in 'marked' limitations [6] in two domains of functioning, or result in an 'extreme' limitation[7] in one domain." 20 C.F.R. § 416.926a(a). In making this assessment of functional equivalence, there are six domains to be considered: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) ability to care for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Citing the child's multiple school "readiness" deficiencies identified by test results in the Spring of 2003 (R.216), his deficiencies in comprehending, following instructions and staying on task (*e.g.*, 174-175,190,192), his need for a significant degree of individual attention and support (*e.g.*, R.175,191-192), his recognized speech deficiencies (R.177,197), and his need to receive some

---

[6] *See* footnote 4.

[7] An *extreme* limitation in a domain is defined in 20 C.F.R. § 416.926a(e)(3) to be: an impairment which interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities. [A person's] day-to-day functioning may be very seriously limited when [his or her impairment] limits only one activity or when the interactive and cumulative effects of [the impairment] limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean. 20 C.F.R. § 416.926a(e)(3)(I).

support when working with peers (R.192.), the plaintiff argues that this evidence demonstrates a "marked" limitation in the child's ability *to acquire and use information*, a "marked" limitation in his ability *to interact and relate with others*, and an "extreme" limitation in his ability *to attend and complete tasks*.

As demonstrated in his decision, the ALJ expressly considered each of the six functional equivalence domains. (R.71-75.) He found no *health and well-being* limitation, no *self-caring* limitation, and no limitation in the child's ability *to move about and manipulate objects*. (R.74-76.) In contrast, he concluded that J.W.M. had a less than marked limitation in the area *of acquiring and using information*, a less than marked limitation in the area of *interacting and relating to others*, and a marked limitation in his ability *to attend and complete tasks* due to his AD/HD. (R.71-73.)

*Inter alia*, the ALJ noted that the evidence showed that J.W.M.'s use of prescription Ritalin for AD/HD had resulted in improved school performance. (R.71-72.) *Gross v. Heckler*, 785 F.2$^d$ 1163, 1166 (4th Cir. 1986) (if a condition can be controlled with medication or treatment, it is not a disabling condition). Additionally, the ALJ noted the fact that J.W.M. had excellent verbal skills, was of at least average intelligence, was able to learn new materials and apply age-appropriate problem solving skills, received special education assistance only for his speech articulation deficits, demonstrated at least average cognitive skills, and (according to Ms. Shores) demonstrated age-appropriate knowledge and skills. (R.71.) In his decision, the ALJ also took note of the various professional assessments and opinions of teachers, psychologists and social workers, including those

10

of the state agency reviewers.[8] (R.72-74.) In substance, it was the ALJ's conclusion that this evidence simply did not support finding that J.W.M. had functional limitations of listing-level severity. (*Id.*)

### D. Conclusion

Based on a detailed review of the record, one is constrained to conclude that substantial evidence supports the Commissioner's final decision to deny SSI in this case. The child's school records, the psychological test results, the school and clinical evaluation results, the teacher and social worker observations and assessments, the state agency psychological reviews, and the hearing testimony provide more than the requisite substantial evidence necessary to support the ALJ's determination that, through the decision date, J.W.M.'s impairments were not functionally equivalent to a listing.

The forgoing review and analysis of the administrative record is not intended to suggest that J.W.M has not been emotionally damaged by an extraordinarily traumatic family situation and does not have significant emotional and attendant functional difficulties as a result. However, the ALJ specifically considered J.W.M.'s emotional issues and limitations in accordance with his decisional responsibilities. Therefore, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence.

---

[8] Although the plaintiff argues in her brief that the ALJ relied exclusively on the opinions of the state agency psychologists, a careful reading of the ALJ's decision fails to support this contention. Instead, the ALJ accepted their opinions concerning the extent of the minor child's functional limitations only to the extent that they were consistent with other evidence in the record. *See generally Smith v. Schweiker*, 795 F.2d 343, 345-346 (4th Cir. 1986).

11

## IV. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is supported by substantial evidence;

2. The record demonstrates that J.W.M. has the "severe" impairments identified by the ALJ in his written decision;

3. The record demonstrates that J.W.M.'s AD/HD; it is pharmacologically managed; it is a "severe" impairment within the meaning of the Act, and it is not an "extreme" limitation of J.W.M.'s ability to attend and complete tasks;

4. The record demonstrates that J.W.M.'s AD/HD and associated impairments result in a less than marked limitation on his ability to acquire and use information;

5. The record demonstrates that the J.W.M.'s AD/HD and associated impairments result in a less than marked limitation on his ability to interact and relate to others;

6. The Commissioner's final decision gave proper consideration and weight to the opinions and assessments of the reviewing state agency psychologists;

7. Substantial evidence exists in the record to support the Commissioner's finding that through the decision date, J.W.M. was not disabled within the meaning of the Act;

8. The plaintiff has not met her burden of proving J.W.M.'s disability as alleged in her SSI application; and

9. The final decision of the Commissioner should be affirmed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING SUMMARY JUDGMENT to the defendant, DENYING plaintiff's claim, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.** Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 8th day of May 2009.

/s/ James G. Welsh
United States Magistrate Judge